not authorized. Upon the whole case there was enough to take the question to the jury and to sustain the verdict.

The order appealed from should be reversed, the verdict reinstated and judgment entered thereon, with costs to the appellant. All concur.

WAKEFIELD CONST. CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. MUNICIPAL CORPORATIONS (§ 354*)—IMPROVEMENT CONTRACT—PERFORMANCE —APPROVAL OF ENGINEER OR BOROUGH PRESIDENT.

Under a contract for sewer construction, providing that, if the city engineer should certify in writing to the borough president that the performance of the contract was unnecessarily and unreasonably delayed, the president might notify the contractor to discontinue all work, the president's letter stating that he was of the opinion and so certified that the contract was not being done satisfactorily to the department, but was unnecessarily and unreasonably delayed, and notifying the contractor to discontinue the work, though purporting to state his own opinion, was sufficient under the contract as a notice to discontinue the work, provided that such action was justified.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*].

2. MUNICIPAL CORPORATIONS (§ 354*) — CERTIFICATE OF ENGINEER — GOOD FAITH.

Under a contract for sewer construction providing that, if the chief engineer should certify in writing to the borough president that the performance of the contract was unnecessarily or unreasonably delayed, the president might notify the contractor to abandon the work, it was for the engineer to determine whether the performance of the contract was unreasonably or unnecessarily delayed, and, in the absence of fraud, or bad faith, his certificate thereon was conclusive; it being only necessary that he should exercise his honest judgment upon the facts which he knew or ought to have known; but a certificate, based on an opinion capriciously or arbitrarily formed without regard to the facts, though without conscious dishonesty, not being given in good faith.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

3. MUNICIPAL CORPORATIONS (§ 354*)—CERTIFICATE OF ENGINEER—EVIDENCE.

Under the terms of a contract for sewer work providing that if the engineer should be of an opinion that the performance was unnecessarily or unreasonably delayed, he should notify the borough president who might order the work discontinued, the contractor, upon the engineer's certifying his opinion to that effect, was entitled to show what the actual facts were, and whether there were any facts upon which such opinion could have been based.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

4. MUNICIPAL CORPORATIONS (§ 374*)—ACTION—SUFFICIENCY OF EVIDENCE— GOOD FAITH OF CERTIFYING ENGINEER.

Evidence in an action for damages for canceling plaintiff's contract for sewer construction, providing that, on the engineer's certificate that performance was unreasonably delayed, the borough president might cancel the contract, *held* sufficient to sustain a finding that the engineer's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

certificate was arbitrary, and not based upon an honest consideration of facts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. § 374.*]

Appeal from Trial Term, New York County.

Action by the Wakefield Construction Company against the City of New York. From a judgment entered on a verdict and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

Clarence L. Barber, of New York City, for appellant.
L. Laflin Kellogg, of New York City, for respondent.

McLAUGHLIN, J. In October, 1909, the plaintiff entered into a contract with the city of New York for the construction of a sewer in the borough of the Bronx. The work was commenced in November of that year, and in May, 1910, the plaintiff was notified that the contract was canceled, and it was prevented from further performance. This action was brought to recover the damages sustained. Upon the trial the plaintiff had a verdict, and from the judgment entered thereon and an order denying a motion for a new trial defendant appeals.

Substantially the only question presented by the appeal is whether the contract was canceled in accordance with its terms. It was to be completed within 600 working days: Sundays, holidays upon which no work was done, and the time during which work was delayed through the fault of the city being excepted. The chief engineer of the borough of the Bronx was made the arbiter in case of disputes, and it was further provided that if the contractor should abandon or sublet the work, or "if, at any time the chief engineer shall be of the opinion and shall so certify in writing to the president, that the performance of the contract is unnecessarily or unreasonably delayed, or that the contractor is willfully violating any of the conditions or covenants of this contract, or is executing the same in bad faith, or not in accordance with the terms hereof  *  *  *  the president may notify the contractor to discontinue all work or any part thereof under this contract,  *  *  *  and thereupon the contractor shall discontinue said work or such part thereof, and the president shall thereupon have the power to contract for the performance and completion of the work in the manner prescribed by law." , The president referred to was the president of the borough of the Bronx.

The appellant's claim is that the contract was duly canceled in accordance with the clause quoted. In this connection it appeared at the trial that on May 14, 1910, the chief engineer of sewers and highways of the borough of the Bronx wrote a letter addressed to the commissioner of public works of that borough with reference to the contract, stating that the plaintiff had been ordered to commence work on November 15, 1909; that 126½ working days had been consumed and only $15,861.60 of work completed, the estimated cost being $671,-

725.50; that during the month of April only about 40 men a day had been employed and $1,800 of work done; and that the plant installed was worth only about $20,000, whereas a sufficient plant would require an expenditure of at least $60,000. The letter also stated the quantity of materials delivered on the work and concluded:

"There is nothing to indicate that the contractor has even a fair conception of the magnitude of the work he has in hand. There seems to be no well defined idea of carrying the same out. His forces are now, and have been in the past, entirely inadequate, and urging by the engineers seems to have no effect whatever. * * * In view of the foregoing, I would recommend that under covenant AA of the specifications that the contract be declared abandoned."

The covenant referred to is the clause above quoted.

Upon the strength of this letter, the borough president on May 16, 1910, wrote to the plaintiff notifying it:

"I am of the opinion and do so certify in writing that the work on the contract * * * is not being prosecuted in a manner satisfactory to this department, but is unnecessarily and unreasonably delayed in violation of the terms and conditions of the contract and the work is not progressing according to the terms of the contract. In view of the above reasons I hereby declare your contract abandoned and you are hereby notified to discontinue all work under said contract. * * *"

After the receipt of this letter, the plaintiff, against its protest, was forced to abandon the work, and the question presented is whether the contract were legally canceled according to its terms.

[1] It is claimed by the respondent that neither of these letters complies with the requirements of the contract authorizing its termination. So far as the notice given by the borough president is concerned, this claim is entirely without foundation; for while it purports to state his own opinion, and does not show clearly upon which of the grounds stated in the contract his action was based, nevertheless, it was an unequivocal notice to discontinue the work and that is all the contract required. As a matter of fact, the only ground upon which the city seeks to justify the action taken is that the performance of the contract had been unnecessarily delayed, and it is a much more serious question whether the letter of the chief engineer of sewers and highways were sufficient to warrant the action of the president. He was empowered to cancel the contract for that reason only in case "the chief engineer shall be of the opinion and shall so certify in writing to the president, that the performance of the contract is unnecessarily or unreasonably delayed."

It seems that, after the contract was made, the office of the chief engineer of the borough of the Bronx was abolished and his duties in part assumed by the chief engineer of sewers and highways. There can be little doubt, under the contract, the latter officer had the powers and duties of the former chief engineer of the borough. The difficulty is that the letter in question is not addressed to the president, but to the commissioner of public works, and it nowhere states that in the opinion of the chief engineer the performance of the contract had been unnecessarily or unreasonably delayed; on the contrary, the letter is to the effect, not that the plaintiff had unreasonably or unnecessarily

delayed the work in the past, but that it then seemed unlikely that he would be able to proceed with due diligence in the future. Assuming, however, that the statements in the letter sufficiently indicated that it was the chief engineer's opinion that the work had been unnecessarily delayed and that the letter was intended to reach the borough president through the proper channels, as it obviously did, I am, nevertheless, of the opinion the judgment should be affirmed.

[2, 3] Under the terms of the contract, it was for the chief engineer to determine whether the performance of the contract were unreasonably or unnecessarily delayed; and, in the absence of fraud or bad faith, his certificate to this effect was conclusive. All that was necessary was that he should exercise his honest judgment upon the facts, which he knew or ought to have known. The question whether his certificate did represent such a determination was submitted to the jury under a charge which clearly brought out this point, and to which no exception was taken by the appellant; the court saying:

"In considering this question I must repeat to you, and you must remember, that the parties have made the chief engineer their arbiter and that his certificate cannot be impeached without proof of fraud or bad faith. It cannot be impeached as fraudulent, and you have no right to hold it fraudulent, merely because you yourself may believe that the performance was not unnecessarily delayed."

There seems to be no dispute between the parties as to the law, but there is some question between them as to its application; the appellant's claim being, as I understand it, that the certificate could be impeached only by showing conscious dishonesty on the part of the chief engineer, so that evidence of the actual facts relating to the performance of the work was inadmissible. In forming his opinion the engineer necessarily relied to some extent upon the reports of his subordinates. It seems obvious that if those reports were untrue or inadequate, and the engineer, without any investigation himself, relied solely upon them in forming his opinion, then no matter how implicitly he believed in the truth of the reports, his certificate would not be conclusive because it would not represent his honest judgment based upon existing facts. Therefore, I am of the opinion that the plaintiff was entitled to show what the actual facts were, and, if there were no facts upon which the judgment of the chief engineer could have been based, then the jury was justified in concluding that either the facts had been misrepresented to him, or that his opinion was not based on any facts. The chief engineer did not have the right to cancel the contract at his option, but only to certify when in his opinion its performance had been unreasonably or unnecessarily delayed. If he formed such an opinion capriciously or arbitrarily, without regard to the facts, then his certificate was not given in good faith.

The jury was plainly instructed that they could not find in favor of the plaintiff on this issue merely because upon the evidence they would not have decided that the work was unnecessarily delayed, but only if they found from the facts that the certificate had been given so unreasonably and arbitrarily as to indicate bad faith, "because bad faith does not mean always an absolute fraud. It may mean an ar-

bitrary or capricious act. The discretion which has been put here in the chief engineer was the discretion which depended upon his honest judgment."

[4] The finding of the jury that the certificate was given arbitrarily is amply sustained by the evidence. The sewer to be constructed was of concrete, some 10,500 feet long, in streets which had not been built. The only convenient way in which material could be brought was by water, and the creek where such materials were landed was frozen for a considerable part of the winter. The contract, as already indicated, was signed on October 16, 1909, and provided that work should be begun under it on notice by the president; the place being stated in the notice or designated on the ground by the engineer. The plaintiff was notified to commence work on November 15th, but the line of the work had not then been staked out. It applied for and received permission to commence work at another point, but that was not staked out until November 26th, which was Friday, and the work was commenced the following Monday. Early in December the plaintiff again applied for and obtained permission to commence construction at another point, but this was not staked out until January 8, 1910, and work was there commenced two days later—January 10th.

Under the contract not more than 100 feet of trench could be opened in any one place in advance of the complete building of the sewer, unless otherwise ordered. The laying of pipes and concrete between December 1st and April 1st was made subject to such regulations as should be prescribed by the engineer and the original notice to the plaintiff to commence work had expressly excepted "that portion of the work excluded by the terms of your contract between December 1st and April 15th." The conditions prescribed subsequently by the engineer absolutely prohibited such work when the temperature was below 25° F., and permitted it only upon certain conditions when the temperature was between 25° and 32° F. The temperature was below 25° F. on many days during the winter, and, in addition to this, there is evidence that the plaintiff had received assurances from the engineer that it was not expected to prosecute the work vigorously during the first winter.

A large quantity of cement was delivered on the work on April 11, 1910. Under the contract this was to be subjected to tests, the longest of which lasted for 28 days. The evidence is conflicting as to whether the plaintiff were ever notified prior to the time it was notified to discontinue work on May 16th that the cement was satisfactory. It also appears there were several delays for which plaintiff was in no wise responsible; i. e., the city refused to approve certain structural steel used because it had been painted. The evidence is uncontradicted, however, that the engineer in charge of the work stated to the manufacturer of the steel that he saw no objection to its being painted, and thereafter the manufacturer did the painting. The court charged, without exception, that the city was not justified in rejecting the steel. Certain wire netting was also rejected, but subsequently, without the knowledge of plaintiff, the city made an arrangement with

the manufacturer whereby it was accepted, but that fact was never communicated to the plaintiff.

The value of the work which the plaintiff had actually done was estimated by the city at $15,861. There had also been installed a plant (including temporary houses, engines, hoists, concrete mixers, etc.) valued at $20,000; and there had been delivered 1,000 barrels of cement; 385 tons of steel; 190,000 feet of lumber; 820 cubic yards of sand and stone; of the value of upwards of $20,000 more. Without a detailed discussion of the evidence as to what the plaintiff had accomplished, it clearly shows, as it seems to me, that considering only about one-fifth of the contract time had expired, most of which was during a very severe winter, the plaintiff had not unreasonably or unnecessarily delayed, and that no facts were shown upon which such an opinion could have been honestly formed; on the contrary, the impression gained from the testimony introduced by the defendant is not that the plaintiff had failed to proceed with due diligence down to the time the contract was terminated, but that it was not ready to prosecute the work with sufficient speed at the time the contract was terminated—at the very beginning of the season of the year most favorable for doing that kind of work.

As already pointed out, this is the obvious import of the certificate of the chief engineer; and, while his apprehension as to the ability of the plaintiff to continue the work without unnecessary delay may have been justified, his opinion on that subject was not the ground for terminating the contract. The plaintiff could be deprived of the opportunity of completing the contract only when the chief engineer was of the opinion that there had actually been unreasonable or unnecessary delay. Even if his letter can be construed as the expression of such an opinion, I think the jury was justified in finding that it was an entirely arbitrary one, not based upon an honest consideration of the facts.

The size of the verdict is not attacked, and in view of the evidence I do not see how it well could be. Certainly it cannot be said that the verdict is against the weight of evidence as to the damages.

For these reasons, the judgment and order appealed from must be affirmed, with costs. All concur.